## WILLIAM THOMPSON *v.* E. D. SMITH.

```
28   527
110  672
28   527
133  248
28   527
140  166
```

FORCIBLE ENTRY AND DETAINER.—Where one person has a house upon a portion of a tract of land of one hundred acres which he is occupying, and another person enters upon another part of the tract and erects a house, without doing anything further, this act does not constitute a forcible entry upon and detainer of the whole tract.

DAMAGES IN FORCIBLE ENTRY AND DETAINER.—In forcible entry and detainer, if the proofs show that plaintiff was ousted from a portion only of the tract of land described in complaint, he is not entitled to recover damages for the detention of the whole.

TITLE DEEDS AS EVIDENCE IN FORCIBLE ENTRY AND UNLAWFUL DETAINER.—In an action under the Forcible Entry and Detainer Act, if the plaintiff relies on an unlawful entry and a subsequent forcible detainer, a deed of conveyance of the property to the defendant or his lessor is admissible in evidence in his behalf to show the good faith of his entry; but if the plaintiff relies on a forcible entry and detainer, such deed is not admissible.

VIOLENCE, OR FEAR OF VIOLENCE, TO BE SHOWN IN FORCIBLE ENTRY AND DETAINER.—If the plaintiff seeks to recover on the ground of a forcible entry and detainer, and the proofs show that there was no actual force, and that he neither apprehended nor had any ground to apprehend any positive act of violence from the defendant, he cannot recover.

ORDER GRANTING A NEW TRIAL.—An order vacating a verdict or finding and granting a new trial, necessarily vacates the judgment in the case resting on such verdict or finding.

APPEAL from the County Court, City and County of San Francisco.

This action was commenced on the 13th of October, 1863. The complaint alleged, first, that plaintiff was in the quiet and peaceable possession of the premises in question on the 5th of October, 1863, and that on or about that day the defendant, with force and violence, entered upon the premises and expelled the plaintiff therefrom; and secondly, that on the same day, the plaintiff being in the quiet and peaceable pos-

session of the premises, and entitled to the possession of the same, the defendant unlawfully entered on said premises and put out and expelled the plaintiff therefrom, and took possession of the same, and has ever since illegally and unlawfully retained possession of the same from the plaintiff.

On the 1st day of October, Smith, the defendant, went on the ground and marked out a place to build a house, and on the fifth went there with his lumber and commenced its erection. On the seventh, while at work on it, Thompson came to him and objected to his building the house, and told him he claimed the premises, and that he should not allow him to build, and ordered him to remove the lumber, and upon his refusal to do so, took hold of a board to carry it away, when Smith also took hold of the board and pushed Thompson gently aside.

The defendant appealed.

The other facts are stated in the opinion of the Court.

*John B. Felton,* for Appellant.

The plaintiff had not that *exclusive* possession which is necessary to a recovery in this action. Of course the plaintiff's possession must be exclusive, for if the defendant also is in possession *he* necessarily has a right to maintain, even by force, his possession or part possession. The only possession, therefore, which can sustain a plaintiff in this *quasi* criminal action, is such an actual exclusive possession as is inconsistent with and negatives the idea of any use or occupation other than his own. (*House* v. *Keiser,* 8 Cal. 501; *Preston* v. *Kehoe,* 15 Ib. 318; *Cummins* v. *Scott,* 20 Ib. 84; *Wolf* v. *Baldwin,* 19 Ib. 306; *Cummins* v. *Scott,* 23 Ib. 527.)

If this proceeding of forcible entry is to be resorted to whenever a plaintiff has acquired a scrambling, uncertain, or secret possession, it is apparent that the issues involved in the proceeding will be changed from the questions of force and breach of the peace, which are its legitimate objects of inquiry, to nice questions of possession, more fitted for actions of eject-

ment than for these summary proceedings. The entry cannot be called forcible where the intention to proceed to violence is matter of conjecture. It must be betrayed by act, or word, or manner. And it must be an actual immediate intention to use violence, for it is only that which threatens a breach of the peace. The cases on force are : *Frazier* v. *Hanlon*, 5 Cal. 156 ; *Buckman* v. *Whitney*; *Polack* v. *McGrath*, 25 Cal. 54 ; *People ex rel. Niles* v. *Smith*, 24 Barb. 16 ; *Willard* v. *Warren*, 17 Wend. 257.

*P. G. Buchan*, for Respondent.

It will be observed in this case that a motion was made for a new trial in the Court below and denied. In such a case the Court says, in *Walton* v. *Maguire*, 17 Cal. 92 : " Where the Court below refuses a new trial, asked on the ground that the evidence does not sustain the finding and judgment, the Court acts in the exercise of a sound legal discretion, and the Supreme Court will not interfere unless *there was an abuse of discretion.*" (*Lewis* v. *Covillaud*, 21 Cal. 178 ; *Lubeck* v. *Bullock*, 24 Ib. 338.)

The object of the appellant in the case at bar was evidently to try the title, and not the question of forcible entry. " When the possession of the premises is demanded of the party, if he, by word, or act, look, or gesture, gives reasonable ground to apprehend the use of force to prevent the rightful claimant from obtaining peaceable possession, this would be sufficient." (*Dickinson* v. *Maguire*, 9 Cal. 49.)

" The statute was intended to prevent bloodshed, violence, and breaches of the peace, too likely to result from wrongful entries into the possessions of others, and it would be absurd to say that to enable a party to avail himself of its provisions there must have occurred precisely the evil which it was the object of the law to prevent." (*McCauley* v. *Weller*, 12 Cal. 527.) Such is the opinion of Mr. Justice Field in that case, and in the opinion of the Chief Justice, in the same case, (page 529,) he quotes with approbation *Childers* v. *Black*, 9 Yerg. 317 ; 1 Scam. 407.

67

If defendant had a right to introduce his patent, then we had a right to show it was a forgery, and we had a right to show our title, or to show that we derived title from the grantees in that grant, or were entitled by a prior grant; in short, it was asking nothing more of the Court than to abrogate the statute of forcible entry and detainer in that respect, and allow the parties to contest the legal title to the land. As the Court very properly remarked in the case of *Ladd* v. *Stevenson*, already cited, when the plaintiff " has been restored to the possession of which he was thus improperly deprived, it will then be time to try the issue of title."

By the Court, SAWYER, J.

This is an action under the Act relating to forcible entries and detainers, to recover possession of one hundred acres of land in the vicinity of the City of San Francisco. The answer denies the forcible entry and detainer charged, and denies possession of the whole, but admits possession of a part of the demanded premises, describing said part by metes and bounds, and claims that said possession was quietly, peacefully and rightfully obtained.

Plaintiff alleges the monthly value at fifty dollars.

The Court found a forcible entry and forcible detainer, and two hundred and fifty dollars damages. Judgment was thereupon entered for restitution of the demanded premises, and for the damage found.

There was no forcible entry at the time of the interview with Thompson, for, according to all the testimony, defendant's entry had taken place several days before, and he was then actually in possession. If there was any forcible entry, it was at the time of the transactions between defendant and Weeks; and admitting that there was force at that time, it is not clear that the entry had not before that time been peaceably accomplished. The defendant had himself actually been upon the premises several hours manifesting an intent to hold the property. Weeks found him upon the premises waiting

for his teams and lumber an hour before the alleged force was employed, and at that time he informed Weeks that he claimed the premises under a lease from Bayerque, and was going to put up a house. It is at least doubtful whether the acts at the time the lumber arrived constituted a forcible entry within the meaning of the Act. But however this may be, there is no shadow of testimony to extend the entry of defendant and ouster of plaintiff to the whole premises described in the complaint. Plaintiff retained possession of his cabin. His servants were not turned out of that, or in any respect molested in its enjoyment. Such is the plaintiff's testimony, and there is nothing to the contrary. Nor does his possession, such as it was, appear to have been disturbed in any of the other portions of the hundred acres claimed, beyond the immediate vicinity of the particular spot where defendant erected his house. For aught that appears, plaintiff is still in the quiet and undisturbed possession of all besides. Nor does it appear to what extent defendant claimed possession under his lease. The evidence which the defendant himself offered on that point was ruled out on objection of plaintiff. The complaint alleges damages resulting from an entry upon, and detention of, the whole of the land claimed. The testimony as to the value of the premises and damages is applicable to the whole, and the finding and judgment award damages for the detention, as well as restitution of the whole. Clearly, if the plaintiff was only ousted from a part, he was not entitled to recover damages for the detention of the whole. In these respects there is no conflict in the evidence, and it does not support the findings. A new trial must, therefore, be had.

The defendant offered in evidence a patent of the United States, and the conveyance under it, for the purpose of showing the good faith of the entry and to define the limits of the possession of defendant's lessor. Plaintiff objected and defendant excepted. Defendant had introduced evidence tending to show that at the time of defendant's entry, his lessor, Bayerque, and not plaintiff, was in possession. In connection with such evidence we think those documents were admissible to

prove the extent of the possession, which the evidence before
introduced tended to prove. (*Hoag* v. *Pierce, ánte* 187.)    It
may be that for the want of sufficiently definite testimony on
that point, the Court found against possession in Bayerque.    If
the plaintiff relied upon an unlawful entry and a forcible
detainer after such unlawful entry, and not upon a forcible
entry, then it was necessary to inquire into the good faith of
the entry by defendant, for under the Act of 1850, which
controls this action, "it is not every peaceable entry, where
the right of entry does not, in fact, exist, that constitutes an
unlawful entry within the meaning of the statute.    There must
be some ingredient of fraud or wilful wrong on the part of the
party making the entry." (*Dickinson* v. *Maguire,* 9 Cal. 48.)

In discussing the meaning of the term unlawful entry, as
used in the Act relating to forcible entries in *Janson* v. *Brooks,
ante,* we approved of the following language of Mr. Chief Jus-
tice Cope, in *Buckman* v. *Whitney:* "We regard it as apply-
ing only in those cases where the entry is *mala fide* as well as
wrongful, and beyond this its provisions cannot with any pro-
priety be extended." We think the construction put upon
the Act upon this point in those cases correct.    In this case,
then, if the plaintiff relied upon an unlawful entry as distin-
guished from a forcible one, and a subsequent forcible detainer
—and there was a count, though insufficient, framed upon that
theory—the patent and subsequent conveyances were admis-
sible, not for the purpose of establishing title, but to show
that the entry was made in good faith under claim and color
of title, and therefore not unlawful within the meaning of the
term as used in the Act under which the suit was brought.
But if the plaintiff relied upon a forcible entry, then these
documents were inadmissible.    He doubtless claimed on both
grounds.    We think, however, that upon the pleadings as they
now stand the plaintiff must recover, if at all, on the ground
of a forcible entry.

The evidence to show a distinct, peaceable, exclusive pos-
session of plaintiff as against Bayerque, defendant's lessor, as
distinguished from what has sometimes been called a "scram-

bling possession," is not so clear as desirable in cases for forcible entry.

The claim that the plaintiff's possession had continued through Osborne from 1855, in view of the other testimony in the case, appears to us to be but a flimsy pretext. Such possession as the plaintiff had resulted from his own acts since his return from a seven years' residence in the mountains, without reference to his former lease for an indefinite period of time, made ten years ago to Osborne. The evidence and claim connected with the Osborne lease, however, in our judgment, afford a clue to the objects of the plaintiff. Upon a review of the evidence—and it is all in the record—it is impossible to avoid the conclusion that the plaintiff was himself acting in bad faith and endeavoring to acquire and maintain a possession by unlawful means; that he hoped, by putting up a few boards—which, to expedite the work, he had previously framed and fitted for the purpose—that he might enter, as he did, upon land which had been for a long time under the actual control and dominion of other parties, and in a single afternoon put up a cabin, without floor or other convenience for habitation, put a man in to sleep merely, while going elsewhere for his meals, and thereby acquire possession of a hundred acres of land; that he might, through Osborne, by means of the old lease of which the parties long in possession and exercising dominion over the land had never heard, connect the possession so acquired with his possession ten years before, and thereby, with the aid of the Statute of Limitations, secure the land against the parties, whoever they might be, holding the actual title. On the other hand, doubtless, as soon as this proceeding was discovered, the parties who had been exercising control and dominion over the premises under claim of title derived through a patent from the United States (for to show a claim in good faith, defendant having offered in evidence such patent and conveyance under it, and the testimony having been rejected as irrelevant, we must presume the proof would have been made,) were endeavoring through defendant to continue the control, dominion

and possession which they had before acquired. Manifestly, from the evidence, no breach of the peace was contemplated in their proceedings at the time of the entry complained of by either party. But it seems equally evident that the plaintiff was manœuvering to acquire without violence, if possible, a right of action for forcible entry, while the defendant was manœuvering to avoid that result, and these objects of the respective parties were clearly manifest to each other. We cannot see from the evidence, that either apprehended, or had any ground to apprehend, any positive act of violence from the other. If the facts are really such as the evidence indicates, it would be a perversion of the action of forcible entry and detainer from its legitimate uses, and a reproach upon the administration of justice, for the plaintiff to recover. This action is, doubtless, often employed in this State in cases, and to accomplish objects, never contemplated by those who adopted it. It is highly penal in its character, and recoveries under it should be confined by the Courts to cases falling strictly within its provisions. Undoubtedly many cases will arise where it will be extremely difficult to determine whether this action should be maintained or not. But in such cases the Court should bear in mind the object and scope of the action, and determine from the peculiar facts of the case whether, upon the whole, it can be fairly brought within the provisions of the Act relating to forcible entries and detainers.

An order vacating a verdict or finding and granting a new trial, necessarily vacates the judgment resting upon the verdict or finding vacated.

Order denying a new trial reversed, and the judgment entered in the cause vacated, and a new trial ordered.